1

2

3

4                    **UNITED STATES DISTRICT COURT**

5                    **EASTERN DISTRICT OF WASHINGTON**

6   PEDRO SANCHEZ,                          No. 1:15-CV-03079-MKD

7                     Plaintiff,            ORDER DENYING PLAINTIFF'S
                                            MOTION FOR SUMMARY
8          vs.                              JUDGMENT AND GRANTING
                                            DEFENDANT'S MOTION FOR
9   CAROLYN W. COLVIN,                      SUMMARY JUDGMENT

10  Acting Commissioner of Social Security, ECF Nos. 23, 25

11                    Defendant.

12          BEFORE THE COURT are the parties' cross-motions for summary

13  judgment.  ECF Nos. 23, 25.  The parties consented to proceed before a magistrate

14  judge.  ECF No. 4.  The Court, having reviewed the administrative record and the

15  parties' briefing, is fully informed.  For the reasons discussed below, the Court

16  denies Plaintiff's motion (ECF No. 23) and grants Defendant's motion (ECF No.

17  25).

18

19

20

1

**JURISDICTION**

2    The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

3    1383(c)(3).

4

**STANDARD OF REVIEW**

5    A district court's review of a final decision of the Commissioner of Social

6    Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

7    limited; the Commissioner's decision will be disturbed "only if it is not supported

8    by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

9    1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

10   reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

11   (quotation and citation omitted).  Stated differently, substantial evidence equates to

12   "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

13   citation omitted).  In determining whether the standard has been satisfied, a

14   reviewing court must consider the entire record as a whole rather than searching

15   for supporting evidence in isolation.  *Id.*

16   In reviewing a denial of benefits, a district court may not substitute its

17   judgment for that of the Commissioner.  If the evidence in the record "is

18   susceptible to more than one rational interpretation, [the court] must uphold the

19   ALJ's findings if they are supported by inferences reasonably drawn from the

20   record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

1   416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

2   Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

3   404.1520(b); 416.920(b).

4       If the claimant is not engaged in substantial gainful activity, the analysis

5   proceeds to step two.  At this step, the Commissioner considers the severity of the

6   claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

7   claimant suffers from "any impairment or combination of impairments which

8   significantly limits [his or her] physical or mental ability to do basic work

9   activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

10  416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

11  however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

12  §§ 404.1520(c); 416.920(c).

13      At step three, the Commissioner compares the claimant's impairment to

14  severe impairments recognized by the Commissioner to be so severe as to preclude

15  a person from engaging in substantial gainful activity.  20 C.F.R. §§

16  404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more

17  severe than one of the enumerated impairments, the Commissioner must find the

18  claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

19      If the severity of the claimant's impairment does not meet or exceed the

20  severity of the enumerated impairments, the Commissioner must pause to assess

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other

1  work, analysis concludes with a finding that the claimant is disabled and is

2  therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

3      The claimant bears the burden of proof at steps one through four above.

4  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

5  step five, the burden shifts to the Commissioner to establish that (1) the claimant is

6  capable of performing other work; and (2) such work "exists in significant

7  numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2);

8  *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

9      "A finding of 'disabled' under the five-step inquiry does not automatically

10  qualify a claimant for disability benefits."  *Parra v. Astrue*, 481 F.3d 742, 746 (9th

11  Cir. 2007) (citing *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001)).

12  When there is medical evidence of drug or alcohol addiction, the ALJ must

13  determine whether the drug or alcohol addiction is a material factor contributing to

14  the disability.  20 C.F.R. §§ 404.1535(a), 416.935(a).  In order to determine

15  whether drug or alcohol addiction drug addiction is a material factor contributing

16  to the disability, the ALJ must evaluate which of the current physical and mental

17  limitations would remain if the claimant stopped using drugs or alcohol, then

18  determine whether any or all of the remaining limitations would be disabling.  20

19  C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).  If the remaining limitations would not

20  be disabling, drug or alcohol addiction is a contributing factor material to the

1   determination of disability.  20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).  If the

2   remaining limitations would be disabling, the claimant is disabled independent of

3   the drug or alcohol addiction and the addiction is not a contributing factor material

4   to the disability determination.  20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).

5   Plaintiff bears the burden of showing that drug and alcohol addiction (DAA) is not

6   a contributing factor material to disability.  *Parra,* 481 F.3d at 748.

7   **ALJ's FINDINGS**

8         Plaintiff applied for disability insurance benefits and supplemental security

9   income benefits on February 29, 2012.  In both applications, Plaintiff alleged a

10   disability onset date (as amended) of February 3, 2010.  Tr. 82, 310-15.  The

11   claims were denied initially, Tr. 213-35, and on reconsideration, Tr. 240-57.

12   Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on July

13   17, 2013.  Tr. 80-108.  On August 29, 2013, the ALJ denied Plaintiff's claim.  Tr.

14   18-29.[1]

15   _____

16   [1] Plaintiff previously applied for disability insurance benefits and supplemental

17   security income benefits, which claims were denied on February 2, 2010.  Tr. 18

18   (citing Tr. 112-19).  In the instant matter, the ALJ found that Plaintiff rebutted the

19   presumption of continuing nondisability because he changed age categories and

20   had a material change to his conditions.  Plaintiff was diagnosed with depression

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

At the outset, the ALJ found that Plaintiff met the insured status requirements of the Act with respect to his disability benefits claim through September 30, 2013.  Tr. 20.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, February 3, 2010.  Tr. 20.  At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease, a seizure disorder,[2] depression, anxiety, and a history of alcohol abuse.  Tr. 20.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  Tr. 21.  The ALJ then concluded that Plaintiff has the RFC to perform a range of medium work.  Tr. 24.  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 27.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs in significant numbers in the national economy

_____

and anxiety, and with degenerative joint disease, after the previous denial.  Tr. 18, 20, 25, 137.  The ALJ found, however, that despite the new diagnoses, the subsequent medical records did not reveal any significant deterioration in the claimant's condition since the prior denial of benefits.  Tr. 23 (citing Tr. 639, 777).

[2] The ALJ noted that Plaintiff's seizure disorder is not documented with a detailed description of a typical seizure disorder under Listings 11.02 and 11.03.  Tr. 21.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

that Plaintiff could perform, such as bagger, janitor and kitchen helper.  Tr. 27-28.

On that basis, the ALJ concluded that Plaintiff is not disabled as defined in the

Social Security Act.  Tr. 29.[3]

On March 20, 2015, the Appeals Council denied review, Tr. 1-6, making the

ALJ's decision the Commissioner's final decision for purposes of judicial review.

*See* 42 U.S.C. § 1383(c) (3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

him disability insurance benefits under Title II and supplemental security income

benefits under Title XVI of the Social Security Act.  ECF No. 23.  Plaintiff raises

the following issues for this Court's review:

1. Whether the ALJ had a duty to order a consultative examination to
   further develop the record;

2. Whether the ALJ properly discredited Plaintiff's symptom claims; and

3. Whether the ALJ properly weighed the medical opinion evidence.

ECF No. 23 at 6.

---

[3] Because the ALJ found Plaintiff is not disabled, the ALJ was not required to

conduct the DAA materiality analysis.  *See* Tr. 200 (Dr. Rubio notes that substance

abuse is documented, but a DAA materiality determination is not required).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

# DISCUSSION

## A.  Developing the Record

Plaintiff faults the ALJ for "refus[ing] to consider uncontroverted evidence of [thoracic spine] degenerative arthritis and scoliosis in determining his residual functional capacity."  ECF No. 23 at 7-11.  Plaintiff further contends the ALJ failed to fully develop the record by not ordering a consultative examination (CE) after a 2012 x-ray showed "degenerative arthritis of the thoracic spine."  ECF No. 23 at 8-10.

A disability claimant bears the burden to prove that he is disabled.  *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005) ("[t]he claimant carries the initial burden of proving a disability.").  An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001)).  An ALJ possesses broad latitude in determining whether to order a CE.  *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001).

As an initial matter, Plaintiff has waived this claim.  Plaintiff was represented by counsel at the hearing, Tr. 80-81, and counsel did not request a CE or indicate that the record was deficient.  The failure by a represented claimant to

1  raise an issue before the ALJ waives that issue on judicial review.  *See Meanel v.*

2  *Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999).

3      Even considering the merits, Plaintiff's claim fails.  Contrary to Plaintiff's

4  contention, here, the ALJ did consider the evidence when the ALJ stated:

5      A chest x-ray completed in August 2012 revealed mild scoliosis and
       degenerative arthritis of the thoracic spine.  [The treatment provider noted
6      that Plaintiff] had no new complaints in late-2012.

7  Tr. 25 (citing Tr. 697 (August 2012 x-ray); Tr. 955 (December 27, 2012 treatment

8  provider's note indicating "no new complaints" and "SLR [single leg raising test]

9  negative")).

10      An ALJ need not presume that a diagnosis equates to work-related

11  limitations.  *See Kay v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) (the mere

12  diagnosis of an impairment . . . is not sufficient to sustain a finding of disability.").

13  This is particularly true when, as in this case, the same record shows that Plaintiff

14  made no new complaints for four months after the diagnosis.  This does not

15  document, as Plaintiff contends, a worsening of Plaintiff's back impairments.

16      Plaintiff next contends that the ALJ erred by relying on the opinions of

17  reviewing experts because they did not review this x-ray and diagnosis.

18  Additionally, Plaintiff contends that the ALJ should have ordered a consultative

19  examination following the August 2012 x-ray and diagnosis.

20

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

1       The record before the ALJ was neither ambiguous nor inadequate to allow

2   for proper evaluation of the evidence.  The August 2012 x-ray was largely

3   consistent with a March 1, 2010 x-ray that the ALJ notes showed only mild

4   spondylosis of Plaintiff's thoracic spine and no abnormality of his lumbar spine.

5   Tr. 23 (citing Tr. 639).  The diagnosis of scoliosis was mild.  Plaintiff fails to point

6   to any greater limitations supported by the later x-ray than were suggested by the

7   earlier one in 2010.

8       Moreover, the ALJ noted that the evidence prior to and after onset did not

9   reveal significant deterioration.  Examiner Marie Ho, M.D., in April 2008, opined

10  that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; he had no

11  limitations in sitting, standing, walking or bending, no manipulative limitations and

12  was taking no medications.  Tr. 23 (citing Tr. 390-94).  A physical exam in August

13  2008 was unremarkable.  Tr. 23 (citing Tr. 556).  Primary care provider Edward

14  Lin, ARNP, opined in December 2009 that Plaintiff's prognosis was good, and that

15  sustained work would not cause his condition to deteriorate.  Tr. 23 (citing Tr. 711-

16  12).

17      The evidence after the alleged onset date is similar.  In March 2010, testing

18  showed only mild spondylosis of Plaintiff's thoracic spine and no lumbar spine

19  abnormality.  Tr. 23 (citing Tr. 639).  In May 2010, Plaintiff was healthy

20  appearing, in no acute distress, had a normal gait and no focal weakness.  Tr. 23

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

1  (citing Tr. 777).  Diagnostic testing in January 2011 showed degenerative disc

2  disease of the cervical and lumbar spines, but Dr. Dove noted there was no

3  significant canal narrowing and nerve conduction studies did not reveal any right

4  arm abnormalities.  Tr. 23 (citing Tr. 661-65, 668).  In August 2011, Plaintiff had

5  no neck or back pain, normal range of motion and was neurologically intact.  Tr.

6  23 (citing Tr. 520-22).  The ALJ noted the August 2012 x-ray "revealed mild

7  scoliosis and degenerative arthritis of the thoracic spine."  Tr. 25 (citing Tr. 697).

8  Jail medical records dated four months after the August 2012 x-ray, on December

9  27, 2012, stated "[n]o new complaints" and straight leg raising test was negative.

10  Tr. 25 (citing Tr. 955).  At the hearing in July 2013, Plaintiff testified he had

11  recently taken the bus out of town to visit his sister.  Tr. 22 (citing Tr. 93).

12  Plaintiff points to no limitations the ALJ should have incorporated based on the

13  August 2012 x-ray.

14         Because the ALJ relied on medical evidence that showed Plaintiff's

15  neurological and musculoskeletal functioning remained intact despite thoracic

16  abnormalities, *as discussed infra*, and on Plaintiff's demonstrated functioning, the

17  ALJ's duty to develop the record further was not triggered.

18

19

20

**B.  Adverse Credibility Finding**

Plaintiff next faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting his symptom claims.  ECF No. 23 at 20-23.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina,* 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue,* 572 F.3d 586, 591(9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* (quoting *Lester,* 81 F.3d at

834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia,* (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas,* 278 F.3d at 958-59.

This Court finds the ALJ provided specific, clear, and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms "are not entirely credible." Tr. 23.

*1. Daily Activities*

First, the ALJ found that the level of physical and mental impairments alleged was inconsistent with Plaintiff's reported daily activities and social interaction. Tr. 21-26. A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the

claimant's "other testimony" or if those activities are transferable to a work setting. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989) (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.").

Plaintiff faults the ALJ for making findings with respect to daily activities that "are too general." ECF No. 23 at 21 (citing Tr. 23). Plaintiff misreads the record. The ALJ stated

> The claimant's independent daily activities and social interaction, described in Finding 4, are inconsistent with his allegations of disabling functional limitations.

Tr. 23. Finding 4 refers to the ALJ's discussion with respect to step three of the sequential evaluation, Tr. 21-23, detailing Plaintiff's many reported activities. Here, the ALJ found, for example, that Plaintiff had expressed an interest in obtaining a grant to go to school in March 2010 and had planned to attend a consumer credit class, indicating a belief he could participate in educational activities; traveled out of town with friends; attended house parties; occasionally went to church and read scripture; attended to family emergencies; and cooked for himself. Tr. 21-22 (citing Tr. 398-99, 410, 545, 641, 649). Plaintiff enjoyed playing pool and video games, watched sports at a friend's house, visited with

friends, and would go to the library. Tr. 22 (citing Tr. 398-99). He used public

transportation, including traveling to different cities to visit family and attend

appointments. Tr. 22 (citing Tr. 93, 409, 674-75). Plaintiff's living circumstances

required him to be out in the community for significant periods during the day.

For example, in mid-2013, Plaintiff had lived in a shelter for four to five months

that required him to leave during the day. Tr. 22 (citing Tr. 86). Plaintiff

previously lived at a church shelter, which also required him to leave during the

day. Tr. 22 (citing Tr. 94, 398).

The ALJ found that this level of functioning was inconsistent with Plaintiff's

testimony that he is unable to work "due to back pain with significant mobility

problems," Tr. 23 (citing hearing testimony; *see* Tr. 87, 89, 92, 94-95); shortness of

breath, Tr. 23 (*see* Tr. 89, 92); seizures (*see* Tr. 92); and depression, Tr. 23 (*see* Tr.

92, 100-01). Plaintiff testified that he has to alternate positions to alleviate his

pain, Tr. 23 (*see* Tr. 95); has arthritis in his hands and fingers, Tr. 25 (*see* Tr. 98-

100); and has difficulty concentrating, completing tasks, and interacting with

others, Tr. 23 (*see* Tr. 101-03).

The ALJ found Plaintiff's reported independent daily activities and social

interaction are inconsistent with allegations of disabling functional limitations. Tr.

23. "While a claimant need not vegetate in a dark room in order to be eligible for

benefits, the ALJ may discredit the claimant's testimony when the claimant reports

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

participation in everyday activities indicating capacities that are transferable to a

work setting" or when activities "contradict claims of a totally debilitating

impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations

omitted). Here, the ALJ specifically detailed the evidence supporting Plaintiff's

activities that contradict claims of totally disabling impairments.

### 2. *Lack of Objective Medical Evidence*

Next, the ALJ found that the objective medical evidence did not support the

degree of limitations alleged by Plaintiff. Tr. 23. Subjective testimony cannot be

rejected solely because it is not corroborated by objective medical findings, but

medical evidence is a relevant factor in determining the severity of a claimant's

impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also*

*Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ set out in detail the medical evidence regarding Plaintiff's

impairments and ultimately concluded that his allegations were inconsistent with

the medical evidence. The ALJ specifically discussed the medical evidence that

existed prior to the February 2010 decision of non-disability and noted that the

post-2010 medical evidence did not establish a significant change or deterioration

in Plaintiff's condition or functioning. Tr. 23. Moreover, the ALJ specifically

discussed medical evidence contradicting Plaintiff's allegations of disabling back

pain. For instance, in August 2011, Plaintiff went to the ER following an alleged

assault.  He had no neck or back pain, normal range of motion, and was neurologically intact.  Tr. 23 (citing Tr. 520-22).  In November 2011, it was noted that Plaintiff had normal range of joint motion and no motor or sensory deficits.  Tr. 23 (citing Tr. 468, 503, 506).  In January 2012, reviewing doctor Phillip Dove, M.D., opined that Plaintiff was not incapacitated.  Tr. 23 (citing Tr. 653-54, 660-61).

Because an ALJ may discount pain and symptom testimony based on the lack of medical evidence, as long as it is not the sole basis for discounting a claimant's testimony, the ALJ did not err when she found Plaintiff's complaints exceeded and were not supported by objective and physical and exam findings.

*3.  Crime of Dishonesty*

Finally, the ALJ found Plaintiff was not credible because he has a criminal conviction for burglary, a crime of dishonesty.  Tr. 25 (citing Tr. 398).  This too was proper.  *See Hardisty v. Astrue*, 592 F.3d 1072, 1080 (9th Cir. 2010) (relying in part on a prior conviction when assessing credibility has a reasonable basis in law); *Albidrez v. Astrue*, 504 F.Supp.2d 814, 822 (C.D. Cal. 2007) ("[felony] convictions involving moral turpitude" are a proper basis on which to discount a claimant's credibility).

Plaintiff's citation in his reply brief to a Social Security Ruling, SSR 16-3p, is unavailing since rulings do not carry the "force of law," although they are

entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations. *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1224 (9th Cir. 2009) (internal quotations and citations omitted). Even if credited, however, the cited SSR did not preclude the ALJ from relying on Plaintiff's past crime of dishonesty when finding him less than fully credible because SSR 16-3p was not effective until March 28, 2016, more than two years after the ALJ's decision. *See* 2016 WL 1237954 (effective date March 28, 2016).

Moreover, Plaintiff failed to challenge this reason in his opening brief. He has therefore waived the contention on appeal. *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006).

## C. Medical Opinion Evidence

Plaintiff next faults the ALJ for discounting the opinions of Dr. Deutsch, Mr. Clark, and Ms. Campbell. ECF No. 23 at 11-22.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a

reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray,* 554 F.3d at 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830 (9th Cir. 1995).

*1. David Deutsch, M.D. and Christopher Clark, M.Ed., LMHC*

Next, Plaintiff contends that the ALJ failed to consider the August 2010 opinion of Dr. Deutsch. Plaintiff also challenges the ALJ's discounting of Mr. Clark's March 2010 opinions.

Dr. Deutsch opined that Plaintiff's impairment "[m]eets Listing 12.04 and 12.07." ECF No. 23 at 11-13 (referring to Tr. 782). Here, the ALJ did in fact

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 21

address Dr. Deutsch's opinion.  The ALJ referred to Exhibit B14F/42, which is Dr.

Deutsch's opinion.  Tr. 26 (citing Tr. 782).  Dr. Deutsch is a non-examining

reviewing doctor.  As his opinion was contradicted by examining doctors, Dr.

Dove and Dr. Ho, the ALJ was required to provide specific and legitimate reasons

that are supported by substantial evidence.  *Bayliss*, 554 F.3d at 1216 (citation

omitted).

The ALJ rejected this opinion because it was based on Christopher Clark,

M.Ed., LMHC's unsupported opinion, and because both Mr. Clark and Dr.

Deutsch's opinions are inconsistent with the record.  Tr. 26 (citing Tr. 416-21).

*a. Opinions Inconsistent with Longitudinal Mental Health History*

The ALJ observed that allegations and opinions of disabling mental

limitations are inconsistent with Plaintiff's longitudinal mental health history.  Tr.

23.  For example, a psychiatric evaluation in January 2011 indicated that Plaintiff's

main complaints were physical.  Tr. 25 (citing Tr. 397-400) (Plaintiff did not report

any isolation, hypervigilance, flashbacks, lack of motivation, or anhedonia.  The

mental status examination was largely unremarkable.  Plaintiff was alert, oriented,

and pleasant with appropriate affect, stable mood, intact intellectual functioning,

and no suicidal ideation.  Plaintiff was "selectively cooperative," and Ms. Spitler

opined information gaps did not clearly appear to be due to memory impairment).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 22

1    The ALJ further identified that physical treatment records from early to mid-

2    2010 indicated that Plaintiff was alert and oriented with normal behavior.  Tr. 25

3    (citing Tr. 540 (April of 2010); Tr. 575 (December of 2010)).  Although Plaintiff

4    reportedly made suicidal comments when he was arrested in February 2011, Tr.

5    424, on examination he was calm, cooperative, alert, and oriented without

6    cognitive impairment.  Tr. 25 (citing 522, 525).  Plaintiff was not taking any of his

7    normal mediations after he was released from jail in November 2011.  Tr. 25

8    (citing Tr. 501).

9         The ALJ noted that at times from early to mid-2012, Plaintiff was treated for

10    alcohol abuse and later completed a chemical dependency treatment program.  Tr.

11    25 (citing Tr. 481-84, 872) (police found Plaintiff intoxicated; he was taken to the

12    ER by ambulance in January 2012); Tr. 25 (citing Tr. 857) (alcohol abuse and

13    intoxication, March 2012); Tr. 25 (citing Tr. 850, 853) (alcohol abuse, patient is a

14    known alcoholic, May 2012); Tr. 25 (citing Tr. 843, 846) (acute alcohol

15    intoxication and abuse, July 2012); and Tr. 25 (citing Tr. 701-03) (Plaintiff

16    completed treatment in September 2012).

17         Plaintiff had no observable symptoms of anxiety or depression when he was

18    incarcerated in December 2012.  Tr. 25 (citing Tr. 956, 958).  In January 2013,

19    Plaintiff reported his antidepressants were working well.  He was cooperative and

20

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 23

calm, denied suicidal thoughts, and did not present as tired despite reporting sleep

problems.  Tr.  25 (citing Tr. 951).

Significantly, the ALJ noted

> The medical evidence does not reveal any continuous or expected 12-month
> period of disabling physical or mental limitations, even when his history of
> alcohol abuse is considered.

Tr. 25.

Because the ALJ was entitled to consider the inconsistencies of these

opinions with Plaintiff's longitudinal mental health history, the ALJ gave a

specific, legitimate reason for discounting Dr. Deutsch and Mr. Clark's opinions.

*b. Opinions Inconsistent with Performance on MSEs*

In rejecting these opinions, the ALJ relied on the test results conducted from

May 2010 through November 2012 that yielded largely normal results.  Tr. 25

(citing Tr. 641-44) (in March 2010, "mental status exam was unremarkable;" no

psychomotor agitation, speech and affect were appropriate, intellect was average

and memory intact.  Plaintiff's reasoning, impulse control, judgment, and insight

were good); Tr. 25 (citing Tr. 647, 649) (in mid-2010, Plaintiff's GAF was 60).

The ALJ found that the mental status examinations remained essentially

unremarkable.  Tr. 25 (citing Tr. 690) (in June 2012, only anomaly is depressed

affect); Tr. 25 (citing Tr. 693) (depressed mood noted, but otherwise

unremarkable); Tr. 25 (citing Tr. 844) (awake, alert, oriented, behavior, mood and

affect are within normal limits) (repeated at Tr. 1013).  The ALJ's reason is

specific, legitimate, and supported by substantial evidence.

### c. Opinions Based on Discredited Self-Report

The ALJ considered Plaintiff's unreliable self-reporting when he weighed

Dr. Deutsch and Mr. Clark's opinions.  The ALJ observed that Mr. Clark's opinion

appears "based in large part on the claimant's self-report, but, as noted, the

claimant is not entirely credible."  Tr. 26 (citing Tr. 416-23).  *See Tommasetti v.*

*Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that an ALJ may reject an

opinion that is "largely based" on a claimant's non-credible self-reports.)

### d. GAF Scores

The ALJ noted that Plaintiff's GAF score of 60,[4] just two months after Mr.

Clark's March 23, 2010 opinion, contradicted Mr. Clark's assessed GAF of 42.  Tr.

26 (citing Tr. 416-21) (Clark's opinion); Tr. 647 (GAF of 60 in May 2010); Tr.

_____

[4] A Global Assessment of Functioning of 60 indicates moderate symptoms or

limitations, while a GAF of 42 indicates serious symptoms (e.g., suicidal ideation,

severe obsessional rituals, frequent shoplifting) OR any serious impairment in

social, occupational, or school functioning (e.g., no friends, unable to keep a job).

American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental*

*Disorders* (4th ed., Text Revision 2000) (DSM-IV-TR) at 34.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 25

782 (Aug. 2010: Dr. Deutsch notes a GAF of 42); Tr. 1088 (GAX decision indicating Plaintiff was unable to sustain the nonexertional mental demands of work, effective March 26, 2010).  The ALJ properly considered the inconsistency between the GAF scores when he weighed the contradicted opinions.

Plaintiff appears to contend, without citing any authority, that the ALJ should have credited two sources who diagnosed a "pain disorder with both psychological factors and a general medical condition."  ECF No. 23 at 17 (citing Ms. Spitler at Tr. 400, and Mr. Clark at Tr. 418).  Plaintiff's contention is without merit because both are non-acceptable sources for making a diagnosis.  Debbi Spitler is a physician's assistant (Tr. 400); Christopher Clark, M.Ed., LMHC, (Tr. 418), as noted, is also a non-acceptable source.  As such, they are not qualified to make a diagnosis.  *See Molina*, 674 F.3d at 1111 (internal citation omitted) (noting that physician's assistants are not acceptable medical sources); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) ("Other source" testimony can never establish a diagnosis or disability absent corroborating competent "acceptable medical source" evidence). (internal quotation and citation omitted).  The ALJ was not required to credit these diagnoses because they are not corroborated by competent acceptable medical source evidence.

Because the Commissioner is not required to credit medical opinions that are unsupported by the record as a whole, *Batson v. Comm'r of Soc. Sec. Admin.*, 359

F.3d 1190, 1195 (9th Cir. 2004), and because an ALJ may discount a medical opinion that "is largely based" on a claimant's non-credible self-reports, *Tommasetti*, 533 F.3d at 1041, the Court finds the ALJ provided germane reasons for affording Mr. Clark's opinion limited weight.  The ALJ also properly discounted Dr. Deutsch's extreme opinion (because it was based on Mr. Clark's discounted opinion) and because the rest of the record did not support the assessed disabling mental limitations.  These are specific, legitimate reasons supported by substantial evidence.

### 2. Kelli Campbell, ARNP

Plaintiff faults the ALJ for discounting the opinion of Ms. Campbell.  ECF No. 23 at 13-17.  Ms. Campbell, a nurse practitioner, is also considered an "other source," whose opinions about the nature and severity of Plaintiff's impairments are not entitled to controlling weight.  20 C.F.R. § 416.913(d).  The ALJ need only have provided "germane reasons" for rejecting her opinions.  SSR 06-03p, 2006 WL 2329939 at *2; *Molina,* 674 F.3d at 1111.  The Court finds that the ALJ identified germane reasons for rejecting the opinion of Ms. Campbell.

In March 2010, Ms. Campbell opined that Plaintiff's back pain and shortness of breath would interfere with Plaintiff's ability to perform work-related activities and she concluded he was limited to sedentary work.  Tr. 630-38.

First, the ALJ found that Ms. Campbell's opinion was internally inconsistent, in that her assessed RFC for sedentary work was inconsistent with Plaintiff's performance on physical examination at the time.  Tr. 26.  Ms. Campbell's examination of Plaintiff showed mostly normal range of motion and normal functioning.  *See* Tr. 26 (citing Tr. 634-35, 637) (Ms. Campbell notes range of motion is within normal limits in all areas; balance and gait are intact, Babinski and straight leg raising are negative, deep tendon reflexes are preserved and symmetric).  These findings are inconsistent with an RFC limited to sedentary work.  A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported.  *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957.

Second, the ALJ found that Ms. Campbell's assessed RFC for sedentary work was also inconsistent with Plaintiff's longitudinal treatment history and consistently unremarkable performance during other physical examinations.  Tr. 26 (citing Tr. 639) (March 2010: testing showed only mild spondylosis of the thoracic spine and no lumbar spine abnormality); Tr. 23, 26 (citing Tr. 777) (May 2010: healthy appearing, in no acute distress, normal gait and no focal weakness); Tr. 23, 26 (citing Tr. 661-665, 668) (Jan. 2012: diagnostic tests showed degenerative disc disease of the cervical and lumbar spines, but there was no significant canal narrowing and nerve conduction testing did not reveal any right arm

abnormalities); Tr. 23, 26 (citing Tr. 520-23) (Aug. 2011: Plaintiff was assaulted

while incarcerated; upon examination, he had no back or neck pain, normal range

of motion, and was neurologically intact);  Tr. 23, 26 (citing Tr. 468, 503, 506)

(Nov. 2011: Plaintiff had normal joint range of motion, and was neurologically

intact, with no motor or sensory deficit); Tr. 23, 26 (citing Tr. 483) (Jan. 2012:

physical examination was unremarkable); Tr. 23, 26 (citing Tr. 653-61) (Jan. 2012:

examining doctor Phillip Dove, M.D., opined that Plaintiff was not incapacitated,

and noted alcohol abuse or dependence is indicated); Tr. 23-24, 26 (citing Tr. 588,

591-92, 595) (March 2012: physical exam was unremarkable).  An ALJ may

discredit treating physicians' opinions that are unsupported by the record as a

whole or by objective medical findings.  *Batson*, 359 F.3d at 1195.

In addition, the ALJ noted the state agency reviewing sources, Dr. Rubio

Guillermo, M.D. (Tr. 176-83), Dr. John Gilbert, Ph.D. (167-76) and Dr. Michael

Regets, Ph.D. (Tr. 138, 143-47, 158-64), as well as Dr. Phillip Dove, M.D. (Tr.

653-56), all assessed RFC's consistent with that assessed by the ALJ.  Tr. 25-26.[5]

---

[5] Plaintiff's brief cites Dr. Regets' and Dr. Gilbert's diagnosed "severe"

impairments, ECF No. 23 at 8-9, but this is misleading when read out of context

since the step-two severity inquiry is a *de minimus* screening device to dispose of

groundless claims.  *Smolen*, 80 F.3d 1273 (9th Cir. 1996) (citation omitted).

Thus, Ms. Campbell's opinion as to sedentary work was inconsistent with several other reviewing sources. An ALJ is not required to credit opinions that are inconsistent with the rest of the record. *Bayliss,* 427 F.3d at 1218.

The ALJ provided germane reasons for affording Ms. Campbell's opinion little weight.

## CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED**:

1.  Defendant's motion for summary judgment (ECF No. 25) is **GRANTED**.

2.  Plaintiff's motion for summary judgment (ECF No. 23) is **DENIED.**

The District Court Executive is directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and CLOSE the file.

DATED this 4th day of August, 2016.

<u>S/ Mary K. Dimke</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE